UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



MICHELLE SCHMITZ,

*Plaintiff,*

-*against*-

KOHLS, INC.

*Defendant*

Case No.

**COMPLAINT**

JURY TRIAL DEMANDED

Michelle Schmitz, by and through her attorneys, Hogan & Rossi, complains of defendants as follows:

## JURISDICTION AND VENUE

1.      This action seeks damages declaratory and injunctive relief against defendants with respect to  plaintiff's employment, for discrimination, retaliation, and hostile work environment.

2.      This action arises under Title VII of the Civil Rights act of 1964, as amended, 42 U.S.C. § 2000e, et seq. ("Title VII"); and the New York State Human Rights Law, Executive Law § 296, et seq ("NYSHRL").

3.      Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331, 1343, and 42 U.S.C. § 2000e, et seq.

4.      All conditions precedent to the filing of this action have been fulfilled:

(a) a timely charge of employment discrimination was filed with the Equal Employment Opportunity Commission; (b) a Notice of Right to Sue, a copy of which is attached hereto as Exhibit "A", was issued on April 8, 2021, and (c) this Complaint has been filed within ninety (90) days of receipt of the Notice of Right to Sue.

5.      Pursuant to 28 U.S.C §1367,  this Court has supplemental jurisdiction over state and local law claims arising from the same nucleus of operative facts and which are part of the same case or controversy as the federal claims, in this case the NYSHRL claims. Alternatively, this Court additionally has jurisdiction over the NYSHRL claims under 28 U.S.C. §1332 in that there is complete diversity among the parties and the amount in controversy exceeds $75,000.00.

6.      Venue is appropriate in this Court under 28 U.S.C. § 1391 (b) and (c), in that Plaintiff was, at all relevant times, a resident of this judicial district, the defendants, at all relevant times, did business in this judicial district, and a substantial part of the events or omissions giving rise to this claim occurred within this judicial district.

## **PARTIES**

7.      Plaintiff, Michelle Schmitz ("Michelle" or "Plaintiff"), is a 25 year-old female who presently resides in Thornwood New York. Plaintiff was hired by

Kohls, Inc. ("Kohls") on March 31, 2016.

8.      Defendant Kohls is an "employer" within the meaning 42 U.S.C. section 2000e and section 292 of the NYSHRL. Kohls claims to be the largest retail department store chain in the United States and claims to have over 1,100 retail locations. Kohls is incorporated in and maintains its corporate headquarters in Menomonee Falls, Wisconsin.

## FACTS

9.      Michelle began working as a part time cashier at Kohls in Bedford Hills New York on or about March 31, 2016.

10.     From the beginning, Michelle reported to and was supervised by Ivan Cantos, who, at all relevant times held the position of assistant store manager.

11.     In about September of 2016, Michelle was offered a full-time position by the store manager Kevin Greulich. However, before her full-time employment commenced, Mr. Greulich informed Michelle that Ivan Cantos wanted to provide the full time position to someone else and, since the position was in one of Cantos' departments, the decision of who to place in the full-time position was his. As a result, Michelle did not receive the full-time position at that time, and she remained a part time employee under the supervision of Ivan Cantos.

12.     Cantos began to groom Michelle and presented himself as a mentor

and a friend. Beginning in about April, 2017, Cantos began to introduce suggestive remarks to Michelle. These included comments about her physical appearance. He told her how "lucky" her boyfriend was, and asked Michelle to go out on dates with him. These types of sexually suggestive comments were made even as Cantos presented himself as a friend to Michelle, and  were made by Cantos on a frequent and regular basis. Cantos would intersperse his harassment with behavior in which he claimed to act as a friend or mentor.

13.     At about the same time, in about May of 2017, Cantos told Michelle that he now "realized" that Michelle was a "very good worker" and that he would "fight" to get her a full-time position.

14.     In about August 2017, Cantos escalated his workplace sexual rhetoric, telling her "I just want to kiss your lips, they look so good."

15.     Cantos approached Michelle on various occasions and reminded her that he was working to get her a full-time position. At the same time, Cantos complained that Michelle would not even give him a "chance", referring to a romantic or sexual encounter or relationship. Cantos further stated that he would not have denied her a full-time position previously, in September 2016, had he known her and had she then "given him a chance."

16.     Michelle was offered a full-time position by the store manager and

became a full-time employee in about November, 2017. She continued to report to and work under the supervision of Cantos.

17.     Cantos told Michelle repeatedly that he went out of his way and "worked so hard" to get Michelle a full time position. He told her that she needed to go on a date with him to "prove" how much he meant to her, in return for all he had done for her. Michelle continued to rebuff Cantos' advances and refused to date him.

18.     In about May 2018, Michelle was promoted to the position of Area Supervisor. She reported directly to Cantos .

19.     Cantos continued to escalate his pervasive harassment. He told her that he was "in love" with her and that she was his "dream girl." He told her that he wanted to make love to her and that she would be a 'cat in bed'.

20.     Michelle continued to rebuff Cantos, and in response, Cantos began to display anger and hostility toward Michelle in the presence of Michelle's co-workers. Cantos would scream at Michelle and denigrate her in front of her co-workers. She was humiliated in front of her co-workers and feared that she would lose her job because of her rejection of his romantic/sexual advances. Cantos would purposely give other associates the false impression that he was in a relationship with Michelle, and would tell associates that Michelle had upset him, prompting

them to ask Michelle what she had done to upset Cantos.

21.     In about December, 2018 Cantos sexual harassment rose to the level of physical assault, when he grabbed her around the waist. Cantos ignored Michelle's demand that he stop touching her. When she stated that she was going to report his behavior, Cantos told her that he would not get into trouble because he was friends with the loss prevention manager, Arshad Antonsanti.

22.     On more than one occasion Cantos would corner Michelle in the stockroom and would not let her pass, demanding that she kiss him. Michelle would always refuse, and try to get around Cantos. On at least one occasion, Cantos grabbed  her wrist and pulled her back toward him.

23.     Upon information and belief, Cantos admitted to a co-worker that he tried to kiss Michelle and that Michelle pushed him away.

24.     Cantos' physical assaults upon Michelle continued and intensified. In March 2019, Cantos tried to put his hands down Michelle's shirt in the stock room. On that occasion, Michelle evaded Cantos and Cantos pulled her back toward him. Michelle crouched on the floor and tucked herself in order to protect herself. Cantos laughed at her and told her that her actions were "cute."

25.     Cantos would repeatedly tell Michelle that he wanted to marry her and have babies with her. He would ignore her work-related questions and pivot

towards his romantic demands. He would demand to know whether he had a chance with her. Cantos repeatedly told Michelle that he loved her.

26.     In or about May 2019 Cantos asked Michelle if she had a boyfriend and told her "your butt looks bigger, and that only happens if you have a boyfriend."

27.     Shortly thereafter, in about June 2019, Cantos stated to Michelle "you can't wear those pants around me, it turns me on." Cantos attempted to touch Michelle's buttocks, and Michelle yelled "Stop". Cantos became upset because she had yelled at him to stop within earshot of another associate.

28.     Cantos actions were such that other associates would ask him whether he and Michelle were involved with each other. Cantos purposely gave others the false impression that he was in a relationship with Michelle because, in his words, "if I don't deny it, it may come true." Cantos demeaned Michelle by telling other associates that Michelle liked to "go out and get drunk all the time" and "get friendly with the boys."

29.     At no time had Michelle acquiesced to or encouraged Cantos' advances.

30.     Cantos' actions toward and about Michelle created a pervasive hostile work environment. Michelle was subject to constant harassment and/or unwanted

physical contact nearly every shift that she worked with Cantos. Cantos falsely led other workers at Kohls to believe that he and Michelle were romantically involved.

31.     Michelle was often forced to leave her workstation to escape Cantos, leaving her in fear that she would lose her job because she was not at her workstation.

32.     In or about May, 2019 Juan Yan changed Michelle's assistant manager position to place her as an assistant manager in another department. In the new position, Michelle reported to Nancy Donofrio. However, it was not uncommon for Michelle to be scheduled when Cantos was the manager on duty, and she would be required to work with Cantos.

33.     Cantos displayed jealousy whenever Michelle would speak to male co-workers, including Rodrigo Pozo ("Pozo") or Dan Hecht. Cantos would make comments, such as, "there is your boyfriend." On one occasion, Cantos attempted to get Pozo terminated from his position because of what Cantos perceived as his friendship with Michelle. The attempted termination concerned a childish text sent to Cantos from Pozo's phone. Cantos attempted to terminate Pozo even though he knew that the text was sent by Michelle and not Pozo. Cantos told Michelle regarding discipline against Pozo "it's your fault that your boyfriend is going to be in this situation now. It's all your fault and you're going to have to deal with the

consequences."

34.     On or about August 15, 2019, Cantos observed Michelle speaking to assistant manager Nancy Donofrio, and told another associate "be careful with that one, she is two-faced." He would complain to Michelle "I see you working hard for Nancy, you would never do that for me." Cantos also told Michelle "I know how much you want Rodrigo, I'm sorry Maria got him first."

35.     Michelle was so affected by Cantos that she would fight off the urge to cry, and would need to take a break to avoid crying and would break down in the bathroom or her car.

36.     On or about August 16, 2019, Michelle felt distraught and overwhelmed by Cantos' abuse. Michelle disclosed Cantos' harassment to assistant store manager, Nancy Donofrio. Ms. Donofrio notified Miranda Gajewski of Kohls' associate relations department, upon information and belief, also on August 16, 2019.

37.     Ms. Gajewski did not follow up with Michelle until August 26, 2019, ten days after Michelle reported being subject to pervasive sexual harassment and assault at the hand of Mr. Cantos. During this time, Michelle continued to report to and work under the supervision of Cantos at times when Cantos and Michelle were both on duty. On August 29, on a follow up call with Ms. Gajewski, Michelle told

Ms. Gajewski that she was still working under Cantos, and that she could not continue doing so. Ms. Gajewski told Michelle that she would speak to Juan Yan, the store manager, about Michelle not being scheduled to work alone with Cantos. Other than the promise to speak with Mr. Yan, no action to protect Michelle had been taken by Kohls.

38.     By September 4, 2019, Kohls *still* had not changed Michelle's schedule or the fact that she had to work with and be supervised by Cantos. Michelle again contacted Ms. Gajewski to let her know that her work schedule still had not been changed.

39.     On September 6, 2019, Ms. Gajawski told Michelle that she was still investigating the Matter, and that Mr. Yan had informed her that Michelle's schedule had been changed so that her work schedule and Cantos' would not coincide. In fact, her work schedule had not been changed and Michelle was still scheduled to work when Cantos was the assistant manager on duty on September 7, 2019.

40.     Upon information and belief, at no time did Kohls alter Cantos' schedule in order to make sure that his schedule did not coincide with that of Michelle.

41.     Despite the facts that constituted her discrimination complaint, by

September 7, 2019 Michelle was still on the schedule to work with and under Cantos. Michelle refused and told Ms. Gajawski that she could not return to work with Cantos. Remarkably, Michelle was contacted by the store manager, Mr. Yan, who told her that he could not change her schedule and that she must work her shift with Cantos. Michelle did not go to work.

42.     On or about September 12, 2019, Ms. Gajawski contacted Michelle to tell her that no witnesses saw Cantos directly touch her, that she believed that Michelle and Cantos were friends, and that she was closing Michelle's complaint. Ms. Gajawski did not indicate that Cantos would be disciplined as a result of Michelle's complaint.

43.     Kohls intended not to take any further action to keep Michelle out of harms way.  Michelle informed Ms. Gajawski that she could not work with Cantos. Instead of removing Cantos, Ms. Gajawski advised Michelle that  she could choose to be transferred to another store. In the alternative, Ms. Gajawski offered to limit Michelle's shifts at Bedford Hills to hours when a manager or assistant manager other than Cantos was present, so she would not be at the store alone with Cantos. Gajswski did not offer to change Cantos' schedule and she emphasized that there was no guarantee that Michelle would not overlap with Cantos. Further, given the constraints in scheduling Michelle only when Cantos was not present, Kohls would

not guarantee Michelle that she would be scheduled for her full 40 hours per week of work.

44.     Michelle advised that she did not want to transfer to another store. Thereafter, Cantos was permitted to select his schedule and Michelle was scheduled for the times that were left, mainly closing shifts, while Cantos continued to work the shifts of his choice.

45.     On or about September 30, 2019, Michelle had to wait in the Kohls parking lot for 30 minutes because Cantos changed his schedule. Michelle had to wait in the parking lot for Ms. Donofrio because she could not be alone with Cantos. Kohls did not pay Michelle for the time that she had to sit in the parking lot waiting for Cantos to leave the store.

46.     Beginning in about October 2019 Michelle was told by the store manager, Mr. Yan, that she would receive the most undesirable shifts because of having to separate her from Cantos.

47.     On or about October 13, 2019, Michelle was scheduled to work with Cantos, with Mr. Yan present. During her shift, Mr. Yan left the store, leaving Michelle alone with Cantos. Michelle immediately called Mr. Yan, who told her that he had better things to do than sit at the store. He told Michelle to leave the store for an hour and that he would call her when Cantos left. As a result, Michelle

left the store at about 3:49 PM and returned at about 5:07 PM. Mr. Yan did not call Michelle to inform her when Cantos was leaving the store.

48.     Michelle was not paid for the time that she had to leave the store to avoid Cantos.

49.     On or about November 5, 2019, Michelle's schedule was changed by Mr. Yan to overnight shifts. Kohls required overnight shifts during the holiday season. It is, upon information and belief, Kohls' practice to offer part time associates a promotion to full time status on the overnight shift. It is not Kohls policy to require a full time employee to change her schedule to work overnight. In this case, Mr. Yan punitively required Michelle to work overnights because of her sexual harassment complaint against Cantos. Yan  stated requiring her to work overnight  was the easiest thing to do given Michelle's "situation".

50.     On November 16, 2019, Michelle, who was scheduled to begin her overnight shift at 10:00 PM, could not begin work until midnight because Cantos was there. Kohls did not require Cantos to leave, and instead required Michelle to miss two hours of her shift. Michelle was not paid for the two hours of lost work.

51.     Michelle filed a complaint with the EEOC in about December, 2019. Upon information and belief, Kohls was notified of the discrimination complaint in writing on about January 30, 2020.  In February 2020, a corporate associate relations

manager named Lou Bellassai contacted Michelle and told her that they were investigating 'new allegations' that Michelle made in the EEOC Complaint. He asked about her contact with Cantos since August 2019.

52.     It was only after Michelle's filing of her EEOC complaint that Kohls took any action with respect to Cantos. Upon information and belief, Kohls suspended Cantos on or about February 24, 2020 and terminated him on or about February 28, 2020.

53.     The store manager, Juan Yan, became aware that Cantos was not returning on about March 2, 2020. Upon information and belief, he instructed another associate to 'spy' on Michelle and to report Michelle's communications with others back to him.

54.     In or about February and March 2020, Mr. Yan verbally harassed and retaliated against Michelle for her complaints concerning Cantos. Additionally, on March 5, 2020, Mr. Yan again changed Michelle's schedule in order to give her more undesirable shifts.

55.     In about February, 2020, during an interview conducted by Lou Bellassai, Michelle informed human resources that Mr. Yan had been targeting her with negative comments and blaming his difficulties adjusting her schedule so as not to coincide with Cantos' schedule, on her. These actions by Yan were

discriminatory and retaliatory against Michelle for reporting Cantos' sexual harassment.

56.     Kohls associate relations manager Lou Bellassai reported to Michelle that he spoke to Mr. Yan, who denied making the comments and that Kohls was "unable to substantiate that those comments had been made by Mr. Yan." Mr. Bellassai reported that, "out of an abundance of caution" Kohls "coached" Mr. Yan in writing that "any comments of that nature would not be appropriate." Kohls again failed to hold its management accountable or to find any wrongdoing on the part of Mr. Yan.

57.     After March 2020, the EEOC complaint against Kohls remained active. Kohls submitted a position statement to the EEOC on or about September 18, 2020. Throughout this period, Mr. Yan continued to target Michelle with negative comments and for alleged minor workplace violations.

58.     On or about February 19, 2021, Mr. Yan and Michelle were sorting new name badges that had arrived for Kohls employees. The shipment contained a name tag for Cantos, even though he had been terminated. Mr. Yan tried to hand Michelle the name badge and stated "oh look your boyfriend. You should keep this for memories".

59.     On or about February 26, 2021,  Mr. Yan told Michelle that it is his dream

that she be fired.

60.     On or about March 1, 2021, Mr. Yan told a co-worker that he "worked too hard to get where he is". He stated that he wanted Michelle to stay out of the office even though her desk and belongings were in there. Yan also stated that he was afraid that Michelle would "twist his words."

61.     Kohls continues to be dismissive of the hostile work environment that it subjected Michelle to and continues to allow its management to punish Michelle for reporting the actions that were taken against her.

## AS AND FOR A FIRST CAUSE OF ACTION AGAINST KOHLS (HOSTILE WORK ENVIRONMENT – TITLE VII)

62.     Paragraphs 1 through 61 are restated and realleged with the same force and effect as if more fully restated and realleged herein.

63.     Plaintiff has been and is being subjected to unwelcome, offensive and harassing sexually discriminatory conduct by Kohls, which acts of Kohls constituted unlawful sexual discrimination on the basis of gender, in violation of Title VII.

64.     The sexually harassing and discriminatory conduct was sufficiently severe and pervasive as to unreasonably interfere with Plaintiff's physical health, work performance, and to create an intimidating, hostile and offensive work

environment.

65.     Cantos was Michelle's supervisor with the power and authority to take tangible employment actions against her.

66.     Cantos' actions resulted in tangible adverse employment actions against Michelle including but not limited to imposing night and overnight work schedules, reduced hours and off-clock work in requiring her to miss work while waiting for Cantos to be off-premises.

67.     As a result of the foregoing, Kohls is vicariously liable for Cantos' actions against Michelle. As a direct and proximate result of Kohls' actions, Plaintiff has suffered harm including physical abuse, loss of job opportunities, great embarrassment, anxiety, humiliation, and mental and physical anguish and is entitled to damages and relief under Title VII.

68.     Michelle is entitled to punitive damages because of Kohls' willful, wanton and malicious behavior and its actions in reckless disregard of Michelle's rights, safety and wellbeing.

## AS AND FOR A SECOND CAUSE OF ACTION AGAINST KOHLS
## (HOSTILE WORK ENVIRONMENT – TITLE VII)

69.     Paragraphs 1 through 68 are restated and realleged with the same force and effect as if fully stated and alleged herein.

17

70.     Even after Plaintiff notified Nancy Donofrio about Cantos' physical assault and pervasive hostile work environment, Kohls failed to take appropriate remedial action.

71.     Kohls continued to require Michelle to work under Cantos supervision, and with Cantos in the store, after she reported Cantos' behavior.

72.     Kohls acted punitively toward Michelle including by requiring her to change her work schedule and otherwise accommodate Cantos.

73.     Kohls continued to discriminate and retaliate in this manner against Michelle.

74.     Kohls failed to take reasonable care to identify and promptly correct sexually harassing behavior. As recently as Februry, 2021, Michelle's manager, Juan Yan, ridiculed Michelle by attempting to give her Cantos' name tag, telling her to keep it as a souvenir.

75.     As a direct and proximate result of Kohls' actions, Plaintiff has suffered harm including physical abuse, loss of job opportunities, great embarrassment, anxiety, humiliation, and mental and physical anguish and is entitled to damages and relief under Title VII.

76.     Plaintiff is entitled to punitive damages because of Kohls' willful, wanton and malicious behavior and its actions in reckless disregard of Michelle's

18

rights, safety and wellbeing.

## AS AND FOR A THIRD CAUSE OF ACTION AGAINST KOHLS
## (HOSTILE WORK ENVIRONMENT – NYSHRL)

77.     Paragraphs 1 through 76 are restated and realleged with the same force and effect as if fully stated and alleged herein.

78.     Plaintiff has been and is still being subjected to unwelcome, offensive and harassing sexually discriminatory conduct by Kohls, which acts of Kohls constituted unlawful sexual discrimination on the basis of gender, in violation of under the NYSHRL.

79.     The sexually harassing and discriminatory conduct was sufficiently severe and pervasive as to unreasonably interfere with Plaintiff's physical health, work performance and to create an intimidating, hostile and offensive work environment.

80.     Cantos was Michelle's supervisor with the power and authority to take tangible employment actions against her.

81.     Cantos' actions resulted in tangible adverse employment actions against Michelle including but not limited to night and overnight work schedules, reduced hours and off-clock work in waiting for Cantos to be off-premises.

82.     As a result of the foregoing, Kohls is vicariously liable for Cantos' actions against Michelle. As a direct and proximate result of Kohls' actions,

Plaintiff has suffered harm including physical abuse, loss of job opportunities, great embarrassment, anxiety, humiliation, and mental and physical anguish and is entitled to damages and relief under Title VII.

83.     Plaintiff is entitled to punitive damages because of Kohls' willful, wanton and malicious behavior and its actions in reckless disregard of Michelle's rights, safety and wellbeing.

## AS AND FOR A FOURTH CAUSE OF ACTION
## (HOSTILE WORK ENVIRONMENT – NYSHRL)

84.     Paragraphs 1 through 83 are restated and realleged with the same force and effect as if stated and alleged herein.

85.     Even after Plaintiff notified Nancy Donofrio of Cantos' physical assaults against her and the pervasive hostile work environment, Kohls failed to take any appropriate remedial action.

86.     Kohls continued to require Michelle to work under Cantos' supervision, and with Cantos in the store, after she reported Cantos' behavior.

87.     Kohls acted punitively toward Michelle including by requiring her to change her work schedule and otherwise accommodate Cantos.

88.     Kohls continued to discriminate and retaliate in this manner against Michelle.

89.     Kohls failed to take reasonable care to identify and promptly correct

sexually harassing behavior. As recently as February, 2021, Michelle's manager, Juan Yan, ridiculed Michelle by attempting to give her Cantos' name tag, telling her to keep it as a souvenir.

90.     As a direct and proximate result of Kohls' actions, Plaintiff has suffered harm including physical abuse, loss of job opportunities, great embarrassment, anxiety, humiliation, and mental and physical anguish and is entitled to damages and relief under the NYSHRL.

91.     Michelle is entitled to punitive damages because of Kohls' willful, wanton and malicious behavior and actions in reckless disregard of Michelle's rights, safety and wellbeing.

## AS AND FOR A FIFTH CAUSE OF ACTION AGAINST KOHLS (RETALIATION-TITLE VII)

92.     Paragraphs 1 through 91 are restated and realleged with the same force and effect as if fully stated and alleged herein.

93.     Kohls has retaliated against Michelle, both for reporting Cantos' abusive behavior internally to Nancy Donofrio and for filing an administrative complaint with the EEOC.

94.     Kohls has retaliated by changing the terms and conditions of Michelle's work, changing her shifts, requiring her to work the least desirable shifts, requiring her to adjust her schedule to avoid Cantos, limiting her work

hours, denying her opportunity for advancement in her employment, and requiring her to continue to work with Ivan Cantos during and after its investigation of Michelle's hostile work environment complaints to Kohls. Kohls has subjected Michelle to unwelcome comments and ridicule by a Kohls manager concerning Cantos' illegal and abusive behavior of her.

95.    After Cantos was suspended in February 2020, the store manager, Juan Yan, began to retaliate against Michelle. Mr. Yan is the manager of the store with general authority over all employees including the power to take tangible employment actions against them.

96.    Kohls retaliatory actions as aforesaid have continued to cause Michelle to suffer harm including physical abuse, loss of job opportunities, great embarrassment, anxiety, humiliation, and mental and physical anguish. As such, Michelle is entitled to damages and relief under Title VII.

97.    Michelle is entitled to punitive damages pursuant to NYSHRL § 297(4)(c) as a result of Kohls' willful, wanton and malicious behavior and actions in reckless disregard of Michelle's rights, safety and wellbeing.

## AS AND FOR A SIXTH CAUSE OF ACTION AGAINST KOHLS (RETALIATION-NYSHRL)

98.    Paragraphs 1 through 97 are restated and realleged as if set forth herein.

99.    Kohls has retaliated against Michelle, both for reporting Cantos' abusive behavior internally to Nancy Donofrio and for filing an administrative complaint with the EEOC.

100.    Kohls has retaliated by changing the terms and conditions of Michelle's work, changing her shifts, requiring her to work the least desirable shifts, requiring her to adjust her schedule to avoid Cantos, limiting her work hours, denying her opportunity for advancement in her employment, and requiring her to continue to work with Ivan Cantos during and after its investigation of Michelle's hostile work environment complaints to Kohls. Kohls has subjected Michelle to unwelcome comments and ridicule by a Kohls manager concerning Cantos' illegal and abusive behavior of her.

101.    After Cantos was suspended in February 2020, the store manager, Juan Yan began to retaliate against Michelle. Mr. Yan is the manager of the store with general authority over all employees including the power to take tangible employment actions against them.

102.    Kohls retaliatory actions as aforesaid have continued to cause Michelle to suffer harm including physical abuse, loss of job opportunities, great embarrassment, anxiety, humiliation, and mental and physical anguish. As such, Michelle is entitled to damages and relief under the NYSHRL.

103.    Michelle is further entitled to punitive damages pursuant to NYSHRL § 297(4)(c) as a result of Kohls' willful, wanton and malicious behavior and actions in reckless disregard of Michelle's rights, safety and wellbeing.

## RELIEF REQUESTED

**WHEREFORE**, Plaintiff respectfully prays that this Court:

1.      Assume jurisdiction of this action;

2.      Issue a permanent injunction enjoining defendants from further violations of the aforementioned laws;

3.      Issue a declaratory injunction that the acts of defendants complained of werein violation of the aforementioned laws;

4.      Order defendants to make Plaintiff whole for all earnings and other benefits she would have received but for defendants' violations of law, including but not limited to: wages (front pay and back pay), bonuses, pension, and other lost benefits, with prejudgment interest thereon;

5.      Order defendants to pay Plaintiff compensatory damages for injuries, including emotional distress, suffered as a result of defendants' violation of the aforementioned laws;

6.      Award Plaintiff punitive damages;

7.      Award Plaintiff the costs and disbursements of this action together

with reasonable attorney's fees; and

8.     Award Plaintiff such further and additional relief as the Court may

deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues.

Dated:        June  21, 2021
              Brewster, New York

                                        Respectfully submitted,
                                        Hogan & Rossi.

                                        Scott J. Steiner
                                        *Attorneys for Plaintiff*
                                        3 Starr Ridge Rd.
                                        Suite 200
                                        Brewster, NY 10805
                                        (914) 328-4734